María Hortencia, María Esperanza y Ramón Pastor Díaz Molinari, peticionarios y apelantes-apelados, *v.* Manuel Cividanes Alonso, opositor y apelado-apelante.

Nos. 3990, 3998 y 3992.—*Vistos:* Enero 25, 1927. *Resueltos:* Julio 26, 1927.

1. Partición—Acciones Sobre Partición—Procedimientos y Remedios—Resoluciones en el Curso del Procedimiento—Como Cosa Juzgada.—Lo resuelto por una corte al negar la aprobación del informe de un contador partidor no tiene autoridad de cosa juzgada a los efectos de impedir la aprobación del informe rendido por otro contador partidor nombrado con posterioridad aún cuando esté en pugna con el criterio sustentado por la corte en su resolución negándose a aprobar el primer informe.

2. Partición—Acciones Sobre Partición—Procedimientos y Remedios—Apelación—Revisión—En General.—Impugnado el informe de un contador partidor y la resolución que lo aprobó por no haberse fijado un aumento en el valor de los bienes, cuando el apelante sólo se limita a invocar el criterio de la corte años antes, favorable al aumento, y no se refiere a las pruebas que demuestren el mismo, el Supremo no analizará la prueba que sobre dicho aumento pueda existir.

3. Apelación y Error—Revisión—Presunciones en Apelación—A Quién Incumbe Demostrar la Existencia del Error.—La presunción de justa que tiene una resolución judicial debe ser destruída por el apelante.

4. Marido y Mujer—Bienes Privativos de los Cónyuges—Derechos y Responsabilidades del Marido en Cuanto a los Bienes Privativos de la Mujer—Manejo y Administración de Éstos—En General.—Por el sólo hecho de contraerse matrimonio no puede concluirse que el marido se hace cargo de la administración de los bienes parafernales de la mujer. En ausencia de prueba en contrario, hay que concluir que ésta tenía y conservó la administración de los mismos.

5. Partición—Acciones Sobre Partición — Procedimientos y Remedios — Informe del Contador-Partidor — Aprovechamiento de Anterior Trabajo Rendido por Otro Contador-Partidor.—El que un contador partidor aproveche lo aprovechable de un anterior trabajo rendido por otro en cuanto a un extremo dado, no es error cuando las conclusiones finales a que llega aquél en su informe sobre tal extremo están sostenidas por los hechos y la ley.

6. PARTICIÓN—ACCIONES SOBRE PARTICIÓN—PROCEDIMIENTOS Y REMEDIOS—ADJU-
DICACIONES—AL CÓNYUGE VIUDO—PAGO DEL HABER DEL VIUDO CON BIENES
PARAFERNALES DE LA ESPOSA.—En las operaciones particionales de una he-
rencia, al hacerse la adjudicación final, puede pagarse su haber al viudo con
bienes inmuebles de los aportados por la esposa al matrimonio, especialmente
cuando no se demuestra que con ello se cause perjuicio a los herederos.

7. MARIDO Y MUJER—BIENES PRIVATIVOS DE LOS CÓNYUGES—DERECHOS Y RES-
PONSABILIDADES DEL MARIDO EN CUANTO A LOS BIENES PRIVATIVOS DE LA MU-
JER—MANÉJO Y ADMINISTRACIÓN DE ÉSTOS—ENTREGA DE LOS BIENES AL MA-
RIDO—PRESUNCIÓN.—Cuando los bienes parafernales se entregan en general
para su administración al marido, si se omite entregar algunos en particular,
el marido debe demostrarlo, y en ausencia de tal demostración hay que pre-
sumir que todos se entregaron.

8. DESCENDENCIA Y DISTRIBUCIÓN—PERSONAS CON DERECHO Y SUS RESPECTIVAS
PORCIONES—ESPOSO O ESPOSA SUPERVIVIENTE—MUERTE INTESTADA HABIENDO
HIJOS—HIJOS DEL PRIMER MATRIMONIO—CUOTA USUFRUCTUARIA O VIDUAL
DEL CÓNYUGE VIUDO.—Cuando no hay mejoras, la cuota usufructuaria del
cónyuge viudo debe sacarse de la legítima larga y ser igual a la parte que
corresponda a cada uno de los hijos dividida dicha legítima por partes iguales
entre los hijos y el viudo.

9. DESCENDENCIA Y DISTRIBUCIÓN—PERSONAS CON DERECHO Y SUS RESPECTIVAS
PORCIONES—ESPOSO O ESPOSA SUPERVIVIENTE—MUERTE INTESTADA HABIENDO
HIJOS—HIJOS DEL PRIMER MATRIMONIO—CUOTA USUFRUCTUARIA O VIDUAL
DEL CÓNYUGE VIUDO.—Cuando hay mejoras, se deducen éstas, y lo que resta,
unido al tercio de legítima estricta, será la base de la división. En ningún
caso se perjudicará la porción forzosa de los hijos.

10. DESCENDENCIA Y DISTRIBUCIÓN—PERSONAS CON DERECHO Y SUS RESPECTIVAS
PORCIONES—ESPOSO O ESPOSA SUPERVIVIENTE—MUERTE INTESTADA HABIENDO
HIJOS—HIJOS DEL PRIMER MATRIMONIO—CUOTA USUFRUCTUARIA O VIDUAL
DEL CÓNYUGE VIUDO.—Cuando el cónyuge viudo concurre a la herencia con
hijos de uno sólo de dos matrimonios, la cuota vidual debe detraerse del
tercio de mejora y no del de libre disposición.

RESOLUCIÓN de *R. López Antongiorgi*, J. (Guayama), desestimando
impugnaciones a y aprobando los informes del Contador Parti-
dor. *Revocada* en cuanto se refiere a la cuota hereditaria del
cónyuge viudo y *confirmada* en cuanto a los demás extremos,
devolviéndose el caso.

*Jacinto Texidor,* abogado de Hortensia y María Esperanza Díaz
Molinari; *Francisco Parra Capó,* abogado de Ramón Pastor Díaz
Molinari; *Luis Muñoz Morales,* abogado de Manuel Cividanes
Alonso.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del
tribunal.

La vista de los primeros recursos se celebró el 25 de enero
último. La del tercero se señaló para el 3 de mayo siguiente
y las partes sometieron el caso por sus alegatos. Las tres

apelaciones se interpusieron contra una sola resolución, elevándose tres diferentes transcripciones, cuando una sola hubiera sido suficiente. Consideraremos los tres casos en una sola opinión.

De los autos resulta que doña Rufina Molinari y Sánchez casó en primeras nupcias con Ignacio Díaz Joylar. El esposo murio el 5 de diciembre de 1893 dejando tres hijos habidos en su matrimonio con doña Rufina, que son los peticionarios María Hortensia, María Esperanza y Ramón Pastor Díaz y Molinari.

Según las operaciones divisorias practicadas al morir el esposo, constantes en escritura pública otorgada el 27 de enero de 1896, se adjudicaron a la viuda bienes en pleno dominio por valor de $172,535.61.

Él 7 de junio de 1896 doña Rufina contrajo segundas nupcias con Manuel Cividanes y Alonso, el opositor; el 3 de julio de 1914 murió abintestato y sin dejar sucesión del segundo matrimonio, y el 14 de agosto siguiente la Corte de Distrito de Guayama declaró herederos universales suyos a sus tres hijos del primer matrimonio y a su viudo.

Después de varias incidencias y a los efectos de liquidar y partir definitivamente la herencia, la corte de distrito nombró contador partidor a Francisco Socorro. Rindió éste su informe y la corte lo rechazó por resolución de abril 19, 1923, en la que nombró además contador partidor a Salvador Mestre. El 27 de julio siguiente los interesados estipularon formalizar y protocolizar ellos mismos la partición, prometiendo hacerlo dentro de un término de noventa días. No cumplieron la promesa y el 20 de mayo de 1925 la corte designó de nuevo a Salvador Mestre contador partidor. Actuó, rindiendo dos informes. La corte señaló el 5 de abril de 1926 para oir a las partes y en efecto las oyó. Todas impugnaron los informes.

El 3 de mayo siguiente la corte dictó la resolución apelada declarando no haber lugar a las impugnaciones y aprobando lo propuesto por el contador partidor.

Señálanse en el alegato de las apelantes María Hortensia y María Esperanza Díaz, doce errores; dos en el de Pastor Díaz, y cuatro en el de Manuel Cividanes.

Comenzaremos estudiando el primer error señalado por Pastor Díaz porque la cuestión general que en él se trata afecta a la posición asumida por las apelantes María Hortensia y María Esperanza en los once primeros errores de su alegato. Nos referiremos luego a esos once errores y al duodécimo, que es enteramente igual al segundo del alegato de Pastor Díaz. Entonces consideraremos la apelación del opositor Cividanes, dejando para lo último el primero de los errores que señala, que es el que en realidad de verdad levanta la cuestión más importante envuelta en el asunto.

[1] Se sostiene que la corte de distrito erró al aprobar los informes del contador partidor Mestre porque en dichos informes se ignoró lo ya resuelto por la propia corte en 19 de abril de 1923. En una palabra se alega que dicha resolución de abril 19, 1923, tiene autoridad de cosa juzgada.

No se cita jurisprudencia alguna, ni se presenta ningún razonamiento sólido en apoyo del señalamiento de error. A nuestro juicio es evidente que no puede tener autoridad de cosa juzgada la resolución de que se trata. Se dictó en el curso de un procedimiento, y si bien es cierto que en ella el juez al negarse a aprobar el informe del contador partidor Socorro, fijó su criterio sobre determinadas cuestiones de hecho y de derecho, también lo es que por ella el juez nombró un nuevo contador partidor "con todas las prerrogativas y deberes que le imponen los arts. 67 al 79 de la Ley de Procedimientos Legales Especiales y 1018 al 1054 del Código Civil, en aquella parte que sean aplicables, debiendo dicho contador partidor, una vez aceptado el cargo y prestado el juramento, dar principio a su trabajo dentro del término de noventa días. . .''

Basándose en su nombramiento y en la ley, el contador partidor Mestre comenzó a actuar, y practicada su investigación y oídos los interesados, informó a la corte de acuerdo

con su mejor criterio que en muchos detalles se mostró en pugna con el sustentado por la corte en la repetida resolución de 19 de abril de 1923.  La corte debía entonces decidir como decidió haciendo un nuevo estudio de los hechos del caso y de la ley aplicable.  No estaba obligada a seguir su criterio anterior si quedaba convencida como al parecer quedó de que era erróneo en algunos extremos.  Era su última oportunidad y debía actuar con su mente enteramente abierta a cualquiera resolución que fuere justa.

No existe, pues, el error señalado.  Lo importante no es si la corte decidió de tal o cual modo en 1923, sino si lo decidido en su resolución final se ajusta a los hechos y a la ley.

[2, 3] El primer error señalado por las apelantes María Hortensia y María Esperanza Díaz se refiere al cometido a su juicio por el contador y la corte al no fijar el aumento de valor que los bienes de doña Rufina tuvieron bajo la administración de Fernando Calimano, allá por el año de 1896.

En el supuesto tercero del cuaderno particional presentado por el contador partidor Mestre se consigna que ''se dice'' que los bienes aumentaron de valor bajo la indicada administración, y nada más.  Ello implica que el dicho no fué comprobado en la forma clara y concreta que se necesita para tomar el aumento en consideración.

Las apelantes al discutir el error se limitan a invocar el criterio sustentado por la corte de distrito en 1923 favorable al aumento.  No se refieren a pruebas que demuestren el mismo.  Bajo tales circunstancias no nos sentimos obligados a analizar la evidencia que sobre el particular pueda existir. La presunción de justa que tiene la última resolución de la corte, no ha sido destruída por quienes tenían el deber de hacerlo y por tanto no puede sostenerse que sea errónea.

A igual resolución debemos llegar con respecto a los señalamientos de error números 3, 5, 6, 7, 8, 9, 10 y 11, relativos a no haberse incluído en el inventario la suma de $25,000 como liquidación de una comandita con José María Moreno

y sus socios, a haberse reducido los valores de los bienes de doña Rufina aportados al matrimonio de moneda provincial a moneda americana, a haberse reducido de igual modo el valor del ganado entregado por el administrador Calimano, a haberse dado por establecido que durante el régimen de la sociedad de gananciales se hicieron reformas en la finca "Las Pozas" por valor de $1,800 y se reconstruyó la casa de la calle Ashford de Guayama, a no haberse incluído en el inventario el importe de 2,800 sacos de azúcar de la zafra 1913 a 1914 cosechados y recolectados pocos días antes de morir doña Rufina, a imponerse a la heredera apelante María Esperanza Díaz la colación de $526.40, importe de regalos que se le hicieron al contraer matrimonio, y a cargarse a la heredera María Hortensia Díaz las cantidades que ha recibido a préstamo con posterioridad al fallecimiento de doña Rufina.

Y decimos que debemos llegar a igual resolución porque toda la argumentación se basa también en que las conclusiones del contador partidor, aprobadas por la corte, son contrarias a la opinión de la corte emitida en su anterior resolución de 19 de abril de 1923 y no en un análisis de las pruebas practicadas, de las circunstancias concurrentes y de la ley aplicables.

[4] Por el segundo error señalado por las dichas apelantes se sostiene que la corte no debió impartir su aprobación al supuesto cuarto de la cuenta de partición en el que se consigna que doña Rufina al contrear nuevo matrimonio con Cividanes conservó la administración de sus bienes hasta el 18 de julio de 1901 en que la entregó a su dicho esposo otorgándole una escritura de poder pasada ante notario público.

No estamos conformes. Los bienes de que se trata tenían la condición de parafernales de doña Rufina al contraer su segundo matrimonio, que lo fué bajo el imperio del Código Civil antiguo, y de acuerdo con el art. 1384 de dicho Código la mujer tiene la administración de dichos bienes a no ser

que los entregue al marido ante notario con intención de que los administre.

Las apelantes invocan la autoridad de Manresa que comentando el citado artículo 1384 del Código Civil, dice, en parte, así:

"*Administración de los bienes parafernales, cuando no se la reserva la mujer ni la entrega al marido.*—Entre las dos situaciones perfectamente claras y definidas que distingue el Código: administración de los bienes parafernales por la mujer, o entrega al marido en escritura pública para que los administre, cabe una situación intermedia, tal vez la más frecuente, de la que no se ocupa determinadamente la ley. La mujer aporta al matrimonio bienes o los adquiere durante él, y deja que el marido los administre. No hay constitución dotal, no hay entrega solemne ante Notario, porque todo esto supone formalidades que aunque son útiles, originan gastos y molestias. Los bienes son parafernales desde luego: el marido no tiene la obligación de constituir hipoteca, ni las demás derivadas de equiparar dichos bienes a los dotales inestimados. ¿Qué relaciones jurídicas se crean entre los cónyuges y con relación a terceros?

"La situación a que nos referimos sólo puede significar lo que es realmente una administración o apoderamiento general conferido por la mujer al marido con relación a sus bienes, que forzosamente ha de regirse en todo por las reglas generales del mandato.

"Esta situación hace que en la práctica el marido por sí solo, a pesar de lo dispuesto en el art. 1383, realice ciertos actos, o aun ejercite ciertas acciones como administrador respecto a bienes parafernales, actos o acciones que dentro de sus límites deben estimarse eficaces como derivados del mandato, si bien exigirán la prueba de él, pues no justificándose tal extremo, la regla es la del mencionado art. 1383; el marido ha de obrar con consentimiento de la mujer.

"En efecto, el contrato de mandato es de los permitidos entre los cónyuges, y así como la mujer puede apoderar a un tercero, nombrando uno o varios administradores, con mayor razón puede y debe en tales casos apoderar a su marido, o dejar en sus manos la administración de sus parafernales, sin que en tal caso haya razón para aplicar otras reglas que las naturales y propias del acto, ya que no pueden regir las relativas a la administración de bienes dotales inestimados, por no haberse cumplido para ello con los requisitos legales." 9 Manresa, Comentarios al Código Civil, 499.

No se concluye de las palabras de Manresa que deba presumirse que inmediatamente de contraído el matrimonio en todos los casos el marido se hace cargo de la administración de los bienes parafernales de la mujer. La ley es que la mujer conserva la administración y si es verdad que la mayor parte de las veces existe la situación de hechos a que se refiere el comentarista, alguna prueba es siempre necesaria y nos parece que actuaron prudentemente el contador partidor y la Corte al tomar la fecha del otorgamiento del poder como punto de partida. Si a las apelantes constaba que desde antes el marido se había hecho cargo de la administración, debieron demostrarlo así al contador partidor y a la corte.

[5] Por el cuarto señalamiento de error se sostiene que la corte no debió haber aceptado que el contador partidor Mestre tomara como base el inventario preparado por el contador partidor Socorro.

El contador partidor Mestre explica su forma de proceder satisfactoriamente. Existía ya una relación y valoración de bienes verificada por el anterior contador partidor con audiencia e intervención de los interesados. Sobre ella como base oyó nuevamente a las partes y apreciándolo todo formuló finalmente sus conclusiones.

No vemos que el procedimiento seguido sea erróneo. Era lógico que se aprovechara lo aprovechable del anterior trabajo. La cuestión ante la corte era si las conclusiones finales estaban o no sostenidas por los hechos y la ley.

[6] El duodécimo error señalado por los apelantes que, como dijimos, es igual al segundo establecido por el apelante Pastor Díaz, levanta la siguiente cuestión: Al pagarse al viudo lo que le corresponde en la liquidación de la herencia de su consorte y de la sociedad de gananciales que con ella tenía constituída, ¿pueden adjudicársele bienes inmuebles de los aportados al matrimonio por la esposa como bienes privativos?

Durante el matrimonio de doña Rufina con Cividanes, los

bienes aumentaron considerablemente. Su valor, según el inventario, ascendió a $311,855.61, oro americano. De ellos $191,803.99 eran gananciales. La hijuela del viudo subió a $119,141.28 y las de cada uno de los tres hijos a $61,971.44.

Nada en la ley prohibe que al hacerse la adjudicación final se abonen al viudo algunos de los bienes inmuebles aportados por la esposa. Las apelantes invocan el art. 1028 del Código Civil que previene que en la partición debe guardarse la posible igualdad, haciendo lotes o adjudicando a cada uno de los coherederos cosas de la misma naturaleza, calidad o especie, pero parece que esa regla fué en verdad a la que quiso ajustarse el contador partidor al actuar en la forma en que lo hizo. Los hijos no pueden quejarse. Ellos reciben mucho más de lo que aportó su madre al segundo matrimonio y también se le adjudican algunos de los primitivos bienes privativos. Si los gananciales del viudo ascendieron a $95,901.99, a otro tanto ascendieron los de la madre, haciendo subir su herencia a $209,153.61, oro americano, cuando la cantidad que aportó al matrimonio fué la de $172,533,61, moneda provincial, equivalente a $113,251.62, oro americano.

Los apelantes no citan jurisprudencia alguna en la discusión del error, ni demuestran que han sufrido algún perjuicio apreciable.

Habiendo en consideración todo lo expuesto, se concluye que las apelaciones interpuestas por María Hortensia y María Esperanza Díaz, y por Ramón Pastor Díaz, deben ser declaradas sin lugar. Examinemos ahora la entablada por el opositor Cividanes, siguiendo el plan que trazáramos al principio, esto es, estudiando primero el segundo, luego el tercero, después el cuarto y por último el primero de los errores señalados.

Se queja el viudo de que ni el contador partidor ni la corte reconocieron como deuda a favor de la Sucesión de doña Rufina Molinari la cantidad de $56,654.56 de que dispuso para sí la comunidad de bienes "Sucesión Ignacio Díaz."

Dicha cantidad guarda relación con el producto de la zafra de 1915, a 1916. Refiriéndose a ella dice el contador-partidor:

"Tampoco procede la inclusión solicitada por el Sr. Cividanes del importe de la cosecha de la finca Merced molida por el Administrador Judicial Interino don Rafael Palés Díaz en la central Machete durante la zafra de 1915–16. El producido de dicha cosecha montante a treinta y nueve mil setecientos setenta y seis dólares veinte y dos centavos fué incluído por el anterior Contador Partidor juntamente con diez y ocho mil trescientos diez y seis dólares ochenta centavos en el inventario practicado por el Sr. Socorro, bajo el número (37), siendo de notarse que dicho Contador sufrió un error numérico haciendo aparecer cincuenta y nueve mil setecientos veinte y un dólares diez y seis centavos en vez de cincuenta y ocho mil trescientos diez y seis dólares ochenta centavos que suman dichas partidas.

    ❋     ❋     ❋     ❋     ❋     ❋     ❋

"Terminado el usufructo con la muerte de doña Rufina, los terrenos de la finca Merced quedaron *ipso facto* de la propiedad en dominio pleno de los nudos propietarios.

"En este momento y al extinguirse el usufructo pasó la finca al dominio pleno de los hasta entonces nudos propietarios, siendo también de su pertenencia los frutos pendientes de recolección sin otro derecho el usufructuario o su sucesión que el de percibir los gastos ordinarios de cultivo, simientes, y otros semejantes hechos por él hasta finalizar el usufructo. (Art. 472 del Código Civil) Puigdollers *vs.* Monroig, 14 D.P.R. 204.

    ❋     ❋     ❋     ❋     ❋     ❋     ❋

"Ahora bien las cantidades invertidas por el Administrador Palés en la plantación y cultivo y molienda de la cosecha de 1915 a 1916 para beneficio de la comunidad Sucesión de Ignacio Díaz, de la cual era también administrador y montante a la suma de diez y ocho mil quinientos cuarenta dólares cincuenta y ocho centavos hemos creído propio incluirlos en el inventario como crédito adeudado por dicha comunidad Sucesión de Ignacio Díaz a la Sucesión Rufina Molinari y así lo hacemos constar bajo el número (29) de nuestro inventario quedando reducida a esta suma el importe de cincuenta y nueve mil setecientos veinte y un dólares dos centavos que aparecía en el anterior inventario."

Basta leer lo que antecede para concluir que no cometió error la corte de distrito al aprobar en este particular el

informe del contador partidor. La comunidad cesó a la muerte de la esposa y el viudo no podía continuar participando de los beneficios de la misma.

[7] Se queja también el viudo de que se incluyeron indebidamente como privativos de doña Rufina bienes que no le fueron entregados señaladamente y que habían desaparecido cuando empezó legalmente a administrar el caudal.

Este error guarda relación con el segundo de los señalados por las apelantes María Hortensia y María Esperanza Díaz. Creemos que atendidas todas las circunstancias concurrentes y lo que dijimos al analizar el dicho segundo error, no se ha demostrado que lo propuesto por el contador partidor y aprobado por la corte no sea lo correcto.

Si bien no consta que los bienes privativos fueran entregados señaladamente para su administración al esposo Cividanes, como debieron haberlo sido, es lo cierto que se ha tomado como base el año 1901, fecha del otorgamiento del poder, y que parece natural que todos los bienes se entregaran. Si alguno o algunos no pudieron serlo por haber desaparecido, debió haberlo demostrado Cividanes de modo tal que satisficiera al contador partidor y a la corte y no lo hizo.

Se queja de igual modo el viudo de que se hayan adjudicado a la corte para satisfacer los gastos particionales $6,800. Sostiene que el contador partidor no ha formulado su cuenta de honorarios y que la cantidad reservada es excesiva.

Quizá tenga razón, pero la corte no ha ejercitado aún su poder discrecional y debemos presumir que lo hará en forma debida y que acordará el pago únicamente de aquello que se le demuestre que es justo. Si queda algún sobrante, la Corte lo repartirá entre los herederos de acuerdo con la regla proporcional fijada en la partición.

[8, 9] Estudiamos, por último, el primero de los errores señalados. Se formula así:

"La Corte de Distrito de Guayama cometió error . . . al aprobar el informe del Contador Partidor . . . , en cuanto dicho informe

adopta para determinar la cuota usufructuaria una base errónea contraria a la ley y perjudicial a los derechos del cónyuge viudo.''

La señora Molinari falleció en 1914. La ley aplicable, en tal virtud, es la que sigue: Ley No. 73 de 1911, sección 2, que dice:

''La sección 8 de la 'Ley para modificar y derogar los Artículos 795, 796, 797, 801, 811, 812, 815, 821, 822, 823, y 824 del Código Civil vigente,' aprobada en 9 de marzo de 1905, se entenderá modificada en esta forma:

'' 'Sección 8.—El viudo o viuda que al morir su consorte no se hallare divorciado, o lo estuviere por culpa del cónyuge difunto, tendrá derecho a una cuota, en usufructo, igual a la que por legítima corresponda a cada uno de sus hijos o descendientes legítimos no mejorados.

'' 'Si no quedara más que un solo hijo o descendiente legítimo, el viudo o viuda tendrá el usufructo del tercio destinado por la ley a constituir la mejora, conservando aquél la nuda propiedad hasta que por fallecimiento del cónyuge supérstite se consolide en él el dominio.

'' 'Si estuvieran los cónyuges separados por demanda de divorcio, se esperará al resultado del pleito.

'' 'Las disposiciones de esta Sección y de las subsiguientes 9, 10, 11, 12 y 13 de esta Ley serán aplicables del propio modo a la sucesión intestada que a la sucesión testamentaria.' '' Leyes de 1911, p. 248.

Ley sobre herederos forzosos de 1905, sección 9, que ordena:

''La porción hereditaria asignada en usufructo al cónyuge viudo deberá sacarse de la tercera parte de los bienes que la ley permite al testador destinar a la mejora de los hijos.'' Leyes de 1905, 175, Comp. 1911, p. 721.

Artículo 794 del Código Civil Revisado, que expresa:

''Legítima es la porción de bienes de que el testador no puede disponer por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos.''

Ley sobre herederos forzosos de 1905, sección 2, que determina:

"Constituyen la legítima de los hijos y descendientes legítimos las dos terceras partes del haber hereditario del padre y de la madre.

"Sin embargo, podrán éstos disponer de una parte de las dos que forman la legítima, para aplicarla como mejora a sus hijos y descendientes legítimos.

"La tercera parte restante será de libre disposición." Leyes de 1905, pág. 173.

Los anteriores preceptos de ley no sólo equivalen sino que son iguales, respectivamente, a los artículos 834, 835, 806 y 808 del Código Civil español que rigió en Puerto Rico desde 1889 hasta 1902 en que fue sustituído por el Código Civil Revisado. Sólo se advierte diferencia entre el último párrafo de la sección 2a. de la Ley 73 de 1911 y el artículo 834 del viejo Código Civil, pero esa diferencia en nada influye en la solución del problema planteado. Mencionamos la igualdad de los preceptos que regulan este caso con los del antiguo Código, porque hemos de referirnos a la opinión de los comentaristas españoles para interpretarlos, ya que, como sostienen los distinguidos abogados de las partes, no existe jurisprudencia del Tribunal Supremo de España ni de esta Corte Suprema sobre el particular.

¿Cómo aplicó el contador partidor la ley a los hechos del caso? Transcribiremos sus propias palabras. Son así:

"El capital hereditario de doña Rufina Molinari y Sánchez lo constituye la cantidad de ciento trece mil doscientos cincuenta y un dólares sesenta y dos centavos importe de los bienes privativos y noventa y cinco mil novecientos un dólares noventa y nueve centavos que le correspondieron en la liquidación de los gananciales, ascendiendo en junto ambas cantidades a doscientos nueve mil ciento cincuenta y tres dólares sesenta y un centavos.

"De esta cantidad corresponde en usufructo al viudo don Manuel Cividanes y Alonso una parte igual a la que por legítima corresponda a cada uno de los hijos y descendientes legítimos de la causante no mejorados.

"Para determinar el montante de dicha cuota en usufructo se subdivide la herencia en los tres tercios de que está formada la misma, esto es, en los tercios de legítima, mejora y libre disposición,

para conocer de este modo el montante del tercio de legítima y poder establecer entonces el de la cuota usufructuaria. El capital hereditario asciende a doscientos nueve mil ciento cincuenta y tres dólares sesenta y un centavos y subdividido en los mencionados tres tercios alcanza cada tercio a la cantidad de sesenta y nueve mil trescientos diez y siete dólares ochenta y siete centavos.

"Siendo como antes se expresa la participación usufructuaria una cuota igual a la de cada uno de los hijos y descendientes legítimos no mejorados, tenemos que subdividir el tercio de legítima corta o forzosa en tres partes iguales, por ser tres el número de los hijos y descendientes legítimos de la causante y corresponde, por tanto, a cada uno veinte y tres mil doscientos treinta y nueve dólares veinte y nueve centavos y por tanto, la cuota usufructuaria del viudo don Manuel Cividanes y Alonso, alcanza a igual suma de veinte y tres mil doscientos treinta y nueve dólares veinte y nueve centavos, que serán deducidos del tercio de libre disposición por concurrir en la herencia hijos de otro matrimonio de la causante."

El apelante sostiene que erró la corte al aprobar el informe, porque la base que debió haberse tomado debió haber sido la legítima larga y no la corta. Los apelados sostienen el criterio del tribunal inferior.

No existe, como se ha indicado, jurisprudencia alguna sobre el particular, ni de la Corte Suprema de España ni de ésta de Puerto Rico. En cambio en pocas ocasiones puede encontrarse una divergencia mayor de criterios entre los comentaristas españoles del Código Civil.

El problema a resolver abarca la fijación de dos puntos de partida, a saber; cuál debe ser el dividendo y cuál el divisor.

En cuanto al dividendo existen tres teorías: la que adopta como tal el máximo, o sea el caudal entero de la herencia; la que fija el medio o variable, esto es, la legítima larga, deducidas las mejoras que haya hecho el testador, y la que toma como punto de partida el mínimo, o sea, el tercio de la herencia que constituye la legítima corta o forzosa.

La primera teoría muy pocos partidarios tiene, y es aparente que carece de fundamento sólido alguno; la segunda la sostienen Manresa y Scaevola, y la tercera cuenta con el

apoyo de Morell, López R. Gómez, Frimat, Lecaroz, Lozano Sicilia y otros cuyas opiniones sintetiza Scaevola en el tomo 14 de sus Comentarios al Código Civil, página 640 y siguientes.

La cuestión ha sido cuidadosamente estudiada en el seno del tribunal, llegando al fin a prevalecer unánimemente el criterio expuesto con su claridad y solidez acostumbradas por Manresa en el tomo Sexto de sus Comentarios al Código Civil, criterio que es además el que en la práctica se ha venido siguiendo en Puerto Rico, constituyendo el informe del contador partidor en este caso en realidad de verdad una excepción.

Manresa estudia las diferentes teorías y al llegar a la segunda, dice, en parte, así:

"La legítima se divide entre los hijos y el viudo, siempre que no se perjudique la porción forzosa de aquéllos.

"Razones en que se fundan los que sostienen esta opinión, que es también la nuestra:

"Disponía el Fuero Juzgo, ley 15,. tít. 3o., libro 4o., que la madre, después de la muerte de su marido, debía partir en todos los frutos de la buena de su marido con sus hijos, mientras viviere.

"Disponen los arts. 753 y 812 del Código de Italia, que el cónyuge viudo, en concurrencia con hijos o descendientes legítimos, tiene derecho al usufructo de una porción igual a la que corresponda a cada hijo a título de legítima, comprendiendo también al esposo en el número de hijos.

"Que ésta fué la idea del Sr. García Goyena al redactar la base, y que en tal sentido fué aprobada por la Comisión codificadora, lo prueban las frases pronunciadas por aquél en defensa de su proyecto, como ya lo expone el Sr. Alonso Martínez en su notable obra El Código Civil en sus relaciones con las legislaciones forales.

"Y así lo comprueba el texto del art. 834, al exigir que la cuota del viudo sea *igual* a la que como legítima corresponda, haya de percibir, como dice la base 17, o se adjudique a cada uno de los hijos no mejorados.

"Cuál sea la legítima de los hijos lo dice claramente el artículo 808, sin que haya que recurrir a las bases, porque, aún suponiendo que exista contradicción entre ellas y el articulado del Código, es indudable que lo que rige, lo que ha de interpretarse y aplicarse,

es el Código y no sus bases, cuyo código fué aprobado por las Cortes, y en último término, si en algo módifica aquellas bases, no hay más remedio que acatar la modificación.

"La legítima de los hijos a que alude el art. 834, tiene que ser, por tanto, la que establece el art. 808, en general: las dos terceras partes de la herencia.

"Mas no puede prescindirse de las mejoras expresamente concedidas por el causante. Las mejoras alteran la igualdad entre los hijos. La cuota del viudo, ¿ha de fijarse prescindiendo de las mejoras? Al contrario, ha de fijarse teniéndolas en cuenta para no estimarlas legítima. El viudo no ha de percibir tanto como el hijo mejorado, sino una cuota igual a la del hijo no mejorado, a la del hijo que menos perciba. Así terminantemente lo ordena el art. 834, y para cumplirlo hay que separar siempre la porción destinada expresamente por el padre para mejoras, y considerar como legítima el resto, que será el tercio de legítima estricta, más la parte del otro tercio no aplicada para mejoras, por el testador.

"Ahora bien: la igualdad que el art. 834 requiere, sólo puede obtenerse repartiendo la legítima, o sean los dos tercios del caudal si no hay mejoras, entre los hijos y el cónyuge, o sea considerando al viudo como a un hijo más."

6 Manresa, Comentarios al Código Civil, 508.

Y luego, exponiendo e impugnando la tercera teoría, expresa:

"Los que sostienen esta opinión discurren del modo siguiente: Con arreglo a las bases 16 y 17, la doctrina del Código en el artículo 834 resulta clara y evidente. La cuota del viudo, según la base 17, ha de ser igual a la que corresponda por *legítima* a cada uno de los hijos. La legítima de los hijos, según la base 16, es un tercio del caudal, y nunca más que un tercio. Dividiendo, pues, este tercio por el número de hijos, se obtiene la cuota que a cada hijo corresponde por legítima, y queda fijada la cuota del viudo, que ha de ser igual. Ni la sombra de una duda deja esta cuestión con arreglo a las bases.

"Al dar vida el Código en el art. 834 a la base 17 se encontró con la doctrina del 808, que establece que la legítima de los hijos la constituyen las dos terceras partes del caudal, y aunque en el mismo artículo se distingue y separa con claridad la naturaleza independiente de cada uno de esos dos tercios, que se amalgaman para denominarlos en común *legítima,* se temió que pudiera entenderse,

si se respetaba íntegramente la base, que la legítima a que el art. 834 aludía era la larga, la de los dos tercios, y se adicionó la frase *no mejorados*, para que constase que debía excluirse el tercio de mejora. La adición no ha sido muy feliz, y de su impropia expresión han nacido dudas que necesitan aclaración.

"Mas, desde el momento en que esas dudas existen, y así lo prueba con toda evidencia la distinta interpretación que se da por los cometaristas al art. 834, las bases 16 y 17 deben tenerse muy en cuenta para resolverlas, pues si el texto legal, aun extralimitándose, merece preferencia de hecho sobre las bases, siempre serán éstas un elemento importantísimo de interpretación.

"Palpita en el Código la misma idea que en las bases. Un tercio de bienes de cuya disposición se priva en absoluto al testador; otro tercio del que se le permite disponer también en absoluto; otro tercio, por último, del que se le permite disponer con ciertas limitaciones, o del que se le prohibe disponer fuera de ciertos límites. Privación absoluta; libertad absoluta; libertad y prohibición relativas. He aquí la naturaleza de los tres tercios. De lo cual deducen que el tercio de mejoras no es propiamente legítima, a pesar del precepto terminante del art. 808, confirmado por el 823, suponiendo que la libertad, aunque limitada, que se concede al padre para disponer de dicho tercio, no encaja en el marco del art. 806, que define la legítima, y que la parte que en él corresponda a los hijos no mejorados expresamente la deben en primer término a la voluntad tácita del testador, que no dispuso de todo ese tercio, pudiendo hacerlo, aunque secundariamente lo deban a la ley.

"Por estas y otras razones de menos importancia, que revelan agudeza de ingenio para interpretar la ley en sentido contrario a su letra, concluyen los sostenedores de esta opinión que el hijo no mejorado es el que no toma parte alguna del tercio de mejoras, y por tanto, que la legítima a que alude el art. 834, de conformidad con las bases, es la legítima corta o estricta, siempre un tercio, *debiendo ser la cuota del viudo igual a la que en ese tercio corresponde a cada uno de* los hijos, sin computarse ni tomarse en cuenta para nada la parte que les corresponda del tercio de mejoras.

"Sin duda alguna este sistema es el más sencillo: facilmente se haría la operación dividiendo, en todo caso, por partes iguales entre los hijos, sólo un tercio del caudal, y dando en usufructo al cónyuge viudo una cuota igual a la de cada hijo, sacándola del tercio de mejoras o del de libre disposición, según los casos; pero a nuestro juicio, no puede aceptarse ni seguirse, por ser contrario a la letra y al espíritu de las disposiciones del Código.

"Servirían de fundamento a esa solución las bases 16 y 17, de las aprobadas por la ley de 11 de Mayo de 1888, si pudieran estimarse como derecho constituído. Mas, al desarrollarlas en el Código, se echó de ver que no se determinaba el destino que había de darse al tercio de mejoras, en el caso de no hacer uso el padre o la madre de la facultad de mejorar; la Comisión codificadora estimó que debía acrecer al de legítima de los hijos, siguiendo la tradición de nuestro antiguo derecho, sin que pudiera ser otro el sentido de la base 16, y en este concepto se redactó y aprobó el art. 808 declarando que constituyen la legítima de los hijos y descendientes legítimos las dos terceras partes del haber hereditario del padre y de la madre, pudiendo, sin embargo, disponer éstos de uno de esos tercios para aplicarlo como mejora a sus hijos y descendientes legítimos. Y bajo el mismo concepto se redactaron los arts. 806 y 823, que definen la *legítima* y la *mejora*. Sancionado el Código como ley, a sus disposiciones es preciso atenerse, y no a las bases, cualquiera que sea la interpretación que a éstas pueda darse.

"No hay, pues, otra legítima para los hijos que la determinada en el art. 808; los dos tercios del haber hereditario, con deducción de las mejoras, si las hubiere. A esa legítima se refiere necesariamente el art. 834, y una cuota igual a la que por ella corresponda a cada uno de los hijos que no hayan sido mejorados, debe darse en usufructo al cónyuge viudo. Esto es lo que ordena la ley, y creemos arbitrario e ilegal cualquier otro procedimiento. Así se llena también el objeto de la reforma de igualar, en lo posible, la condición social del cónyuge viudo y de los hijos."

6 Manresa, Comentarios al Código Civil 513 a 516.

No es necesario ningún razonamiento más. En cuanto a este extremo, la situación jurídica no ha variado en Puerto Rico de la que existía cuando Manresa escribió sus comentarios, y ellos contienen todo lo que pudiéramos decir en apoyo del criterio que adoptamos.

En lo que al divisor se refiere, también existen opiniones contrarias. Si prevaleciera la tercera teoría, sería lógico que el divisor lo constituyeran los hijos solamente; pero habiéndose adoptado la segunda, se impone que el divisor se forme por lo hijos y el viudo. Supongamos, por ejemplo, un caso, como este que resolvemos, en que no hay mejoras. Si las dos terceras partes de la herencia se dividen primero

entre los hijos solamente, el total partible quedaría absorbido y no podría cumplirse la sección 9 de la ley sobre herederos forzosos de 1905, que ordena que la porción hereditaria asignada en usufructo al cónyuge viudo, deberá sacarse de la tercera parte de los bienes que la ley le permite al testador destinar a la mejora de los hijos. Para dar al viudo una porción igual a la de cada hijo, no hay más remedio, como sostiene Manresa, que quitar algo a cada uno de éstos.

Debe concluirse, pues, que la norma adoptada por el contador partidor fué errónea tanto al fijar el dividendo como el divisor. El apelante sólo se queja de la fijación del dividendo, pero de revocarse la resolución debe serlo para ajustarla enteramente a la ley tal como ha sido interpretada.

[10] Parece conveniente decir además que el contador partidor aplicó indebidamente la regla contenida en la sección 13 de la ley sobre herederos forzosos de 1905, Comp. 1911, p. 721, igual al artículo 839 del Código Civil antiguo, que prescribe que cuando el viudo concurra a la herencia con hijos de dos o más matrimonios, su cuota debe sacarse del tercio de libre disposición. En este caso existieron ciertamente dos matrimonios, pero los hijos con quienes el viudo concurre lo son de uno sólo. Y a este respecto el Tribunal Supremo de España, en su sentencia de 21 de febrero de 1900, 89 Jurisprudencia Civil, 236, 254, decidió:

"Acerca de esta cuestión son categóricos los textos del Código civil referentes a ella, pues en el art. 835 se establece como regla general que el usufructo correspondiente al viudo debe sacarse del tercio destinado a la mejora de los hijos, y en el 839, como excepción que debe sacarse del tercio libre en el caso de concurrir hijos de dos o más matrimonios, por donde como en la sucesión de la Marquesa no concurren hijos de dos matrimonios, sino el viudo con su entenado, es evidente que la cuota viudal debe de traerse del tercio de mejora, sin que valgan argumentos de analogía, ni el principio de que donde la razón es la misma, idéntica debe ser la regla de derecho, contra preceptos legislativos tan claros y terminantes como los que se contienen en los artículos citados, y para atribuir

a la excepción que es de interpretación estricta, casos que por no estar comprendidos en ella entran de lleno bajo el imperio de la regla general.''

    Por virtud de todo lo expuesto, *la resolución apelada debe revocarse en cuanto por ella se aprobó el dividendo y el divisor adoptados por el contador partidor para calcular la cuota hereditaria del cónyuge viudo y en cuanto dicha cuota se sacó del tercio de libre disposición, y confirmarse en todo lo demás, devolviéndose el caso para ulteriores procedimientos no inconsistentes con esta opinión.*