TEXTO COMPLETO DE LA RESOLUCIÓN
Mediante recurso de certiorari acude ante nos la paite peticionaria, la señora María Núñez Benitez, en ánimo de solicitar la revocación de la resolución dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, “TPF), de 19 de mayo de 2005. Dicho dictamen declaró no ha lugar la reconsideración presentada por la parte peticionaria sobre una resolución y orden del TPI de 28 de febrero de 2005 en una acción sobre división y adjudicación de derechos hereditarios presentada por la parte recurrida contra los co-recurridos y la parte aquí peticionaria. En dicha instancia, luego de celebrada la vista para dirimir los méritos de cierta moción presentada por Núñez Benitez, la cual cuestionaba la base utilizada por el Contador- *622 Partidor para conmutar el usufructo viudal de la parte demandada-recurrida, doña Emilia Velázquez Hernández, el TPI declaró no ha lugar el cuestionamiento y adoptó el cómputo hecho por el Contador-Partidor.
Por las razones que se discuten a continuación, denegamos la expedición del auto de certiorari solicitado.
I
El causahabiente, Don Otilo Ortiz Dumont y Doña Emilia Velázquez Hernández contrajeron matrimonio bajo el régimen de sociedad legal de gananciales en Puerto Rico. Durante su matrimonio procrearon tres hijos de nombres Rafael, Anabelle y Héctor Luis, todos de apellido Ortiz Velázquez. Héctor Luis contrajo matrimonio en dos ocasiones; en su primer matrimonio con doña Betty Velázquez Arroyo procreó tres hijos de nombres Arleen, Rafael y José Luis, todos de apellidos Ortiz Velázquez. En su segundo matrimonio con Doña María M. Núñez Benitez procreó dos hijos de nombres Héctor Luis y Sheila, ambos de apellidos Ortiz Núñez, quienes son menores de edad.
Héctor Luis Ortiz Velázquez falleció intestado el 25 de diciembre de 1995 en Carolina, Puerto Rico. Cuatro años antes, el 29 de enero de 1991, su padre, Don Otilio Ortiz Dumont también había fallecido intestado. Ello corresponde a que los nietos, hijos de Héctor Luis heredarían del caudal de don Otilio por derecho de representación, y Rafael y Anabelle por derecho propio conforme establecido en nuestro ordenamiento juxídico.
Así las cosas, el 17 de mayo de 2001, la parte demandante-recurrida presentó ante el TPI la acción de referencia, de suerte que se dividiera la extinta sociedad legal de gananciales constituida entre doña Emilia y don Otilio. Tampoco se había partido la comunidad de bienes hereditarios constituida entre las partes. El 8 de enero de 2002, con la anuencia de las partes litigantes, el TPI designó al licenciado Raúl Tirado, hijo, como Administrador Judicial y Contador-Partidor de la Sucesión de Otilio Ortiz Dumont (el “Contador-Partidor ’ o “Administrador”).
Mediante Moción Consignando Fianza y Sobre otros Extremos presentada por el Contador-Partidor ante el foro de instancia el 11 de enero de 2002, se resaltaron varios hechos en controversia para llevar a buen fin sus gestiones, tales como las siguientes.
Los hijos del primer matrimonio de Héctor Luis reclamaron a sus tíos y a su abuela, doña Emilia, el pago de rentas por el uso de los inmuebles relictos por el causante. También reclamaron réditos por la explotación de negocios agrícolas a que habían dedicado aquéllos las fincas desde la muerte del abuelo. Adujeron, a su vez, que el co-recurrido, Rafael Ortiz Velázquez, construyó de mala fe varias estructuras sobre los inmuebles.
Tanto doña Emilia como Rafael y Anabelle negaron la procedencia del reclamo de rentas y réditos. Por su parte, Rafael aceptó haber erigido las estructuras, pero negó que lo hubiese hecho de mala fe. Por último, la peticionaria, madre de los menores de edad Héctor Luis y Sheila, presentó objeción a la fórmula sugerida por el Contador-Partidor sobre el cómputo aplicable al momento de conmutar el usufructo viudal correspondiente a doña Emilia.
Acorde con la apreciación del Contador-Partidor, el reclamo de la madre de los menores de edad hacía necesaria la designación de un Defensor Judicial por haber intereses opuestos entre ellos. Finalmente, en el descargo de su responsabilidad administrativa y de lo dispuesto en el Art. 568 del Código de Enjuiciamiento Civil, 32 L.P.R.A. 2401, el Contador-Partidor coordinó con las partes la formación de inventario del caudal hereditario, resueltas las controversias planteadas por aquél.
Luego de varios trámites procesales, la parte peticionaria señaló que el Contador-Partidor rindió su informe parcial enmendado donde concluyó que el caudal relicto neto era de $2,091,224.32. En dicho informe, el Contador-Partidor también informó que los únicos ingresos generados por la sucesión se trataban de unas rentas *623 de una finca de 94 cuerdas pertenecientes al caudal relicto.
De este caudal, el Administrador determinó que la porción reservada en usufructo para la viuda, basado en las personas que comparecieron a la sucesión, correspondía a la cantidad de $348,537.39. Al realizar la operación para la conmutación del usufructo viudal a un capital en efectivo, el Administrador determinó que el valor de las rentas que generaría esa porción legitimaria equivalía a la cantidad de $267,726.62. Para esto, el Administrador utilizó el valor actual de los bienes y cómputo la expectativa de vida que tenía la viuda desde el momento de la muerte del causante, es decir, hace más de 14 años.
En oposición a dicho cómputo, el 1 de febrero de 2005, la peticionaria se opuso a la fórmula utilizada para la conmutación del usufructo viudal. En síntesis, su oposición responde a que a pesar de que el Administrador utilizó el valor actual del caudal relicto como lo ordena el ordenamiento jurídico vigente, la contención de la peticionaria reside en que el Administrador debió utilizar la expectativa de vida que tenía de la viuda al momento de realizarse la conmutación del usufructo viudal y no al momento de la muerte del causante.
Durante la vista celebrada el 28 de febrero de 2005, el foro de instancia resolvió en contra del planteamiento traído por la peticionaria. Por entender que la decisión adoptada por el TPI no fue dictada conforme a Derecho, la peticionaria solicitó oportunamente la reconsideración del dictamen. El foro de instancia acogió la reconsideración y, luego de la celebración de una vista argumentativa, el 19 de mayo de 2005, descartó nuevamente los argumentos esbozados por la peticionaria mediante la bien fundamentada resolución que nos ocupa.
De esta resolución recurre ante nos la peticionaria planteando los siguientes dos errores, a saber:

“Erró el [TPI] al determinar que el valor de la conmutación del usufructo viudal debe computarse utilizando los valores del caudal relicto al momento de la conmutación y utilizando la expectativa de vida de la viuda al momento de la muerte del causante.

Erró el [TPI] al determinar que los herederos no tienen derecho de un crédito a favor del caudal relicto por el valor razonable por el uso exclusivo de los bienes relictos por parte de la viuda desde el momento en que falleció el causante, según lo establecido en Pinto Vda. de Giol v. Giol García, 98 D.P.R. 227 (1969). ”

En cumplimiento con lo intimado por este foro a la parte recurrida para expresarse en torno a los méritos del recurso, estos apoyaron el cómputo realizado por el Contador-Partidor, avalado a su vez por el tribunal recurrido para determinar el valor presente del usufructo viudal. Dicho cómputo, conforme su criterio, consistió en multiplicar la renta anual por el valor actual de cada dólar de ingresos anuales por concepto de dichas rentas, computado a base del 6% anual, pagadero anualmente al final de cada uno de los años comprendidos, entiéndase la expectativa de vida del cónyuge supérstite desde el fallecimiento del causante.
Planteó la parte recurrida en su Oposición... que, en el presente caso, el causante falleció el 29 de enero de 1991, teniendo su viuda 58 años de edad al fallecimiento de éste y existiendo en caudal relicto neto de $2,091,224.32. Los recurridos puntualizaron que el informe del Contador-Partidor antes relacionado fue acogido y aprobado por el TPI por lo que los planteamientos colacionados por la peticionaria carecen de toda validez.
Analizado el expediente, denegamos la expedición del recurso de certiorari solicitado.
II
A
En su primer señalamiento de error, la peticionaria, en esencia, cuestiona la forma en que el Tribunal de *624 Primera Instancia computó el valor de la cuota usufructuaria adjudicada a doña Emilia, al llevar a cabo la conmutación. No le asiste la razón. Veamos.
Como es sabido, la legítima del cónyuge viudo es un derecho que la ley le atribuye de carácter concurrente con el derecho de cualquier otro legitimario, que consiste en un usufructo de cuantía variable, dependiendo de la clase de legitimarios que concurran en la herencia con éste. Arts. 736 y 761 del Código Civil de Puerto Rico, 31 L.P.R.A. 2362 y 2411, respectivamente; Moreda v. Roselli, 141 D.P.R. 144 (1996); Colón Gutiérrez v. Registrador, 114 D.P.R. 850 (1983); Vda. de Sambolín v. Registrador, 94 D.P.R. 320 (1967).
A tono con lo anterior, en Díaz Molinari v. Cividanes, 37 D.P.R. 297, 310-311 (1927), el Tribunal Supremo adoptó las teorías del dividendo medio y del divisor máximo, cómputo correctamente utilizado por el Contador-Partidor en el presente pleito. En virtud de la primera, la cuota que constituye la legítima del cónyuge supérstite se supedita únicamente a haber o no mejorado el causante a sus descendientes. En caso de mejorarlos, el dividendo medio será una tercera parte del caudal relicto neto. En el caso contrario, el dividendo medio serán dos terceras partes del mismo. En virtud de la otra, se requiere tomar el número de hijos o descendientes que concurren a la herencia y añadir al cónyuge supérstite.
Además, dicho usufructo es susceptible de transformación en cuanto a su pago. Es decir, el Código Civil concede a los herederos del causante la posibilidad de conmutar dicho usufructo a favor del cónyuge viudo, de la manera que dispone el Art. 765, 31 L.P.R.A. 2415, el cual reza:

“Los herederos podrán satisfacer al cónyuge su parte de usufructo, asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo, procediendo de mutuo acuerdo, y, en su defecto, por virtud de mandato judicial. ”

Mientras esto no se realice, estarán afectos todos los bienes de la herencia al pago de la parte de usufructo que corresponda al cónyuge viudo.
Es decir, la conmutación no es otra cosa que la conversión o sustitución del usufructo viudal, que tiene lugar cuando los herederos le satisfacen su cuota al cónyuge viudo asignándole una renta vitalicia o los productos de determinados bienes, o un capital en efectivo. Hasta tanto no se efectúe la conmutación, sustitución o conversión de la cuota viudal usufructuaria, todos los bienes de la herencia estarán afectos al pago de dicha cuota. Colón Gutiérrez v. Registrador, supra.
Por otro lado, procediendo la conmutación, y ante el desacuerdo de herederos y cónyuge viudo, los tribunales tienen la autoridad para decidir la forma de pago que estimen más equitativa y justa de entre las que la ley establece. La apreciación que del efectivo numerario de la cuota usufructuaria haga el TPI, cuando no exista acuerdo entre los interesados, es una cuestión de hecho no impugnable en el foro apelativo, salvo que se demuestre error evidente. Calimano Díaz v. Rovira Calimano, 113 D.P.R. 702 (1983).
Ahora, cuando es el deseo de las partes en controversia liquidar y pagar la cuota viudal usufructuaria, se ha resuelto que es preciso tomar como base para computar dicho usufructo, el valor de los bienes al momento de la conmutación, no al momento de la muerte del causante, sin peijuicio de cuantas modificaciones y correcciones aconseje la equidad. La fórmula parte de la base de que el principal del usufructo lo constituye determinada parte de los bienes que componen el caudal. A esta parte de los bienes, la cual, como expresáramos anteriormente, variará dependiendo de las personas con quienes concurra el cónyuge viudo en la herencia, debe de computársele una renta anual a razón del 6%.
Entonces, ajustándonos a la controversia que nos ocupa, debe calcularse el valor actual de dicha renta anual neta ("Present Value" o "Present Net Worth"), tomando en consideración la esperanza de vida del cónyuge *625 viudo a la muerte del causante. Véase Calimano Díaz v. Rovira Calimano, supra; Efraín González Tejera, Derecho de Sucesiones, Tomo I: La Sucesión Intestada', San Juan, Editorial de la Universidad de Puerto Rico, 2001, a la pág. 122; Juan Muñiz Belbrú, Herencia, El Usufructo Viudal, Determinación y Liquidación, Puerto Rico, 1997, a las págs. 37-40(especial énfasis nota al calce núm. 78), 41-44. Esto se logra multiplicando la renta anual por el valor actual de cada dólar de ingresos anuales por concepto de dichas rentas, computado a base del 6% anual, pagadero anualmente al final de cada uno de los años comprendidos en el período indicado, en este caso, el tiempo que se espera que viva el viudo desde el fallecimiento del causante. Véase, Calimano Díaz v. Rovira Calimano, supra.
Conforme a lo anterior, de la voluminosa prueba presentada cuyo contenido consta, en gran parte, de minuciosos cómputos matemáticos, observamos que los mismos se ciñen estrechamente con el procedimiento ordenado para determinar la conmutación del usufructo viudal. No solamente quedó debidamente constatado que el Contador-Partidor: 1) tomó en cuenta el valor de los bienes que componían el caudal al momento exacto de la conmutación (sin hacer abstracción del derecho de usufructo que tenía doña Emilia), sino que, 2) luego de tomado dicho valor, computó la renta anual a razón del 6% y calculó el valor presente de la misma tomando en consideración la expectativa de vida de doña Emilia al momento de la muerte de don Otilio, a saber, desde el 28 de enero de 1991, cuando doña Emilia contaba con 58 años de edad.
Por ello, colegimos, sin lugar a duda, que el Contador-Partidor, al momento de preparar su cuaderno particional, calculó el usufructo viudal conforme a la jurisprudencia antes citada, razón por la cual avalamos la misma por ceñirse estrictamente a los postulados de derecho enunciados. El primer error señalado no fue cometido.
B
Conforme con el planteamiento de la parte peticionaria en su segundo error, ésta señala que debe considerarse un crédito a los herederos por el uso de los bienes pertenecientes al caudal por parte de la viuda. Coincidimos con la observación del foro recurrido que claudicar ante dicha pretensión operaría contrario a derecho. Nos explicamos.
El Artículo 340 del Código Civil, 31 L.P.R.A. see. 1285, dispone que serán aplicables a la división entre los partícipes en la comunidad, las reglas concernientes a la división de la herencia.
El Tribunal Supremo ha establecido que las reglas de la división de herencia se aplican a la división de la cosa común. Díaz v. Registrador, 107 D.P.R. 233 (1978); Cruz v. Sucn. Landrau Díaz, 97 D.P.R. 578 (1969); Shivell v. Barber y Boscio, 92 D.P.R. 400 (1965); Ruiz v. Ruiz, 74 D.P.R. 347 (1953).
En Shivell, supra, a la pág. 410, se señala que por poseer características comunes, la división de la copropiedad y la división de la herencia, el Código Civil asimila ambas situaciones y establece que serán aplicables a la división entre partícipes en la comunidad, las reglas concernientes a la división de la herencia.
Debemos recordar la naturaleza del acto de división entre los partícipes en una comunidad. La división es un acto declarativo y no traslativo. No traspasa nada, sino que declara; precisa el contenido del derecho que los copartícipes ya tenían desde que comenzó la comunidad. Díaz v. Registrador, supra, a la pág. 236; Shivell v. Barber y Boscio, supra, a la pág. 409. Así, el Art. 379 del Código Civil, 31 L.P.R.A. see. 1465, acentúa la naturaleza puramente declarativa al disponer que cada uno de los partícipes de una cosa que se posee en común, se entenderá que ha poseído la parte que al dividirse le corresponde durante todo el tiempo que duró la indivisión.
Con relación a la responsabilidad entre los coherederos durante la indivisión de la herencia, el Art. 1016 del Código Civil, 31 L.P.R.A. see. 2882, dispone que los coherederos deben abonarse recíprocamente en la *626 partición las rentas y frutos que cada uno haya recibido de los bienes hereditarios, las impensas útiles y necesarias hechas en los mismos, y los daños ocasionados por malicia o negligencia. Este artículo consagra la responsabilidad de los coherederos por enriquecimiento injusto.
Los tratadistas Lacruz Berdejo y Sancho Rebullida indican que el "Art. 1.063 (correspondiente al Art. 1016 nuestro), no se aplica a la posesión individual de buena fe, pues los frutos no se han percibido entonces como pertenecientes a la herencia, y conforme al Art. 451 Ce. no deben restituirse". (Énfasis nuestro.)
En Cintrón Vélez, supra, el Sr. Cintrón otorgó un testamento dejando a sus tres nietos el tercio de mejora y de libre disposición de su caudal hereditario. El único inmueble que componía la herencia desde antes de su fallecimiento era la residencia en donde vivían los tres nietos y su madre. En ese caso se señaló como error por los peticionarios que debía imponerse a los nietos una renta en favor de los restantes herederos. Resolvió el Tribunal Supremo que no se había cometido error señalando que los nietos, y a su vez coherederos, poseían de buena fe el inmueble, aún antes de heredar y una vez fueron herederos. No obstante, si bien el hecho de que los nietos hubiesen estado viviendo en la casa con anterioridad a la muerte del abuelo fue un factor que abundó en la determinación del caso, entendemos que ello no fue la razón determinante para el Tribunal Supremo resolver como lo hizo.
Los comuneros tienen derecho a poseer en común los bienes y a servirse de los mismos, según las reglas sobre el uso de la cosa común por los condueños, reglas que permiten utilizar el bien totalmente a cualquiera de ellos cuando no lo estén haciendo los demás. Cintrón Vélez v. Cintrón de Jesús, supra, a la pág. 51. En el caso que nos ocupa, se le debe reconocer a la viuda, doña Emilia Velázquez, por ser copropietaria, la posesión exclusiva.
La teoría general sobre este punto es la siguiente:
“Ahora bien, se trata, en el fondo, de poner de relieve que el derecho a poseer no es exclusivo de ningún comunero, sino que todos tienen derecho a coposeer. Mas siendo innegable que pueden coposeer efectivamente, pero que también no (es decir, que pueden no tener en su poder real todos los comuneros simultáneamente todas las cosas), lo que la jurisprudencia esa intenta es expresar que la tenencia real de alguna cosa común por un comunero sólo, antes que ser considerada como posesión para él, debe de serlo como caso de ejercicio de la posesión de todos a través de él (servidor de la posesión de los demás, aparte de poseedor para sí por su parte) o como caso de posesión mediata de los demás a través de la posesión inmediata suya. Todo ello, no obsta, sin embargo, a que cuando conste que el comunero poseedor, posee para sí, y no (también) como servidor de la posesión de los otros o mediador posesorio de los mismos, se le reconozca la posesión exclusiva a él de la cosa que sea (con los efectos consiguientes para él, como adquisición de frutos, usucapión, etc.) si bien a los otros, mientras estén en plazo, les quepa mediante interdicto o acción reivindicatoría, recobrar la parte de posesión a que tienen derecho. ” (Énfasis suplido.)
Albaladejo, Derecho Civil, Barcelona, Librería Bosch, 1979, T. V, Vol. I, a la pág. 273.
En Cintrón Vélez, supra, se indicó que el Artículo 1016, supra, no se aplica a la posesión individual de buena fe, pues los frutos no se han percibido entonces como pertenecientes a la herencia y conforme al Artículo 380 del Código Civil, supra, no tienen que restituirse.
Doña Emilia, al hacer uso de la vivienda, la cual inclusive habitaba con don Otilio, cuando tenía carácter de ganancial, estaba ejerciendo un derecho al amparo del Artículo 328 del Código Civil, 31 L.P.R.A. see. 1273, sirviéndose de la cosa conforme a su destino y estimamos que sin perjudicar el interés de la comunidad y con el consentimiento tácito de los demás copropietarios. No podemos hablar en este caso de enriquecimiento injusto. 
*627 La frase "conforme a su destino" limita la facultad de los condómines de servirse de la cosa común a los usos fijados por la comunidad o admitidos generalmente para la cosa, ya fueran por su naturaleza o por el uso del tráfico. De la Fuente v. A. Roig Sucrs., 82 D.P.R. 514, 521 (1961). A modo de ejemplo, De la Fuente, a la pág. 522 señala que "no puede transformarse la casa en que se habita en casa de alquiler". Surge entonces que el uso de la propiedad por doña Emilia en este caso, por los últimos catorce años desde la muerte de don Otilio, es "un uso conforme a su destino".
Cuando los coherederos han estado en posesión del inmueble que constituye la herencia, por haber sido su vivienda antes y después de la muerte del causante, tienen su posesión exclusiva y no tienen que restituir frutos o rentas a los otros coherederos. Cintrón Vélez, supra.
Aplicando la misma doctrina al caso que nos ocupa y a tenor con el Artículo 328, antes citado, los comuneros tienen derecho a coposeer los bienes comunes y a servirse de ellos conforme a su destino sin que tengan que pagar renta por su posesión.
Resolvemos que la doctrina establecida en el caso de Cintrón Vélez v. Cintrón de Jesús, supra, es de aplicación al caso de autos en virtud de las disposiciones del Artículo 340 del Código Civil, supra, y la jurisprudencia interpretativa del mismo y por lo tanto no procede imponer a doña Emilia rentas por el tiempo en que ha poseído la propiedad. Tampoco se cometió el segundo error señalado.
III
Por los fundamentos que anteceden, denegamos la expedición del auto de certiorari solicitado.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones