Isabelo Boria Santana, demandante y apelado, *v.* The Maryland Casualty Co., Inc., The Northern Porto Rico Railroad Co., Carmen Centrale, Inc. y Finlay & Waymouth Trading Co., demandadas y apelantes las dos primeras.

Núm. 8477. *Sometido:* Junio 18, 1942. *Resuelto:* Julio 30, 1942.

*C. Coll y Cuchí* y *Diego O. Marrero,* abogados de las apelantes; *Lionel Fernández Méndez,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Isabelo Boria Santana reclamó de The Maryland Casualty Co, Inc., The Northern Porto Rico Railroad Co., Carmen Centrale, Inc. y Finlay & Waymouth Trading Co. $2,580.11 por los daños y perjuicios que alegó haber sufrido a consecuencia de un choque de una locomotora de la Northern Porto Rico Railroad Co. con un *truck* de su propiedad manejado por él mismo.

Se opusieron las demandadas a la reclamación, fué el pleito a juicio y la corte lo resolvió por sentencia absolviendo de la demanda a las demandadas Finlay & Waymouth Trading Co. y Carmen Centrale, Inc., y condenando a The Maryland Casualty Co., Inc. y The Northern Porto Rico Railroad Co. a pagar al demandante setecientos dólares como compensación, más las costas, incluyendo doscientos dólares por honorarios de abogado.

Las demandadas perjudicadas por la sentencia apelaron. Señalan dos errores, el primero cometido al condenarlas sin prueba y el segundo al variar la teoría del caso. En su alegato no discuten la negligencia. Parten de la base de

que fué alegada y probada. Lo que discuten es que no se presentó evidencia que permita fijar la cuantía de los perjuicios reclamados y que la corte dictó sentencia a base de la destrucción total del truck no pudiendo hacerlo porque dicha destrucción no fué alegada como la causa determinada de los daños.

Para resolver el recurso parece lógico que conozcamos el criterio de la corte sentenciadora y veamos si está o no sostenido por los hechos, la ley y la jurisprudencia. En su relación del caso y opinión se expresó así:

"Consideramos que el demandante no ha probado el estimado de los gastos de reparación de las averías en la cuantía alegada de $790.11, ni en ninguna otra suma. Sobre este extremo declaró solamente el demandante a preguntas de su abogado lo que pasamos a transcribir del récord:

" 'P. ¿Ha hecho usted gestiones para reparar ese truck? T. No he hecho nada. Está según lo dejó la locomotora. P. ¿Usted no ha podido volver a usar ese truck? T. No he podido. P. ¿Usted sabe lo que le costaba la reparación de ese vehículo? T. No sé más o menos lo que podía costar. P. (Mostrándole al testigo un documento) Dígame, ¿es ése o no es ése el estimado del precio de las piezas? Sr. Coll: Nos oponemos a esa pregunta porque eso es referencia. P. Contésteme, ¿es ése o no es ése el estimado del costo de las piezas necesarias para la reparación de su truck? T. Sí, señor. Sr. Coll: El hecho de que el estimado se haya trasladado a un borderó, es referencia. La corte: Sostenida la objeción. P. ¿Cuánto costaban las piezas necesarias para la reparación de ese vehículo? T. Yo, legalmente, sobre ese punto no sé decirle porque más o menos habría que... P. ¿Quién hizo las gestiones para averiguar el costo de esa reparación? ¿La hizo usted o alguna otra persona? T. La hice yo, pero más o menos los precios no ....'

"Esta es la evidencia aportada por el demandante sobre el estimado de gastos de reparación, cuya insuficiencia es completa.

"La alegación del demandante de que no tenía ni tiene medios para sufragar la reparación de su vehículo, la consideramos sostenida por la prueba.

"El demandante ha probado suficientemente que el truck fué completamente destruído a causa del accidente, y que quedó inservi-

ble. Así refiere su propio testimonio, el cual especifica además las serias averías que sufrió el vehículo, expresando que el *chassis* está en dos bandas, con los atravesaños todos como una horquilla; el diferencial se salió hasta de las uniones; la plataforma completamente destruída y el gabinete también; y que lo compró a Ceferino Prieto el 1 de octubre de 1938 por precio de $900.

"Opinamos que habiendo quedado destruído el truck como consecuencia del accidente y no habiendo sido reparado—más bien debemos decir, reconstruído—, no hay derecho a recobrar daños por depreciación del vehículo y tampoco por rendimiento de ganancias por término alguno. Si el vehículo hubiese quedado en condiciones de ser propiamente reparado y su dueño hubiese tenido medios para repararlo, y lo hubiese reparado, entonces el demandante tendría derecho a recobrar daños por rendimiento de ganancias durante el tiempo de la reparación, y también por depreciación.

"Habiendo sido el demandante privado del vehículo por la destrucción total del mismo, o por lo menos por ser las averías que sufrió tan importantes que hacían sin duda alguna extraordinaria y costosa su reparación para el demandante, quien es un chófer sin medios para sufragarla, que compró el vehículo a plazos para pagarlo con su trabajo y que además vivía de lo que le producía la explotación del mismo, nos parece que una compensación por el valor del camión al tiempo del accidente, con deducción de su valor actual, sería justa medida de daños en este caso.

"*       *       *       *       *       *       *

"El truck costó al demandante en octubre primero de 1938, $900, y no hay otro motivo para creer que tenía más ni menos valor en esa fecha. Calculamos una depreciación del vehículo por el uso del mismo desde dicha fecha hasta la del accidente, de cien dólares; y estimamos como valor actual del vehículo, más bien, de sus partes aprovechables, otros cien dólares. Consiguientemente concluímos que una compensación de $700 sería apropiada y razonable en este caso, y debe concederse. Al efecto una sentencia en tal sentido debe ser dictada contra las demandadas The Northern Porto Rico Railroad Co., propietaria de la empresa ferroviaria causante del daño, y de su aseguradora The Maryland Casualty Co., solidariamente, con imposición de las costas incluyendo honorarios de abogado en una suma razonable."

¿Pudo la corte sentenciadora basar su fallo en que el truck fué completamente destruído por la locomotora?

■ Vámoslo. Los daños y perjuicios reclamados se especificaron en el hecho séptimo de la demanda, así:

"Que el demandante ha sufrido daños y perjuicios como consecuencia de dicha colisión por los siguientes conceptos:

| | |
|---|---:|
| "Averías sufridas por el *truck* y estimado de gastos de reparación de las mismas | $790. 11 |
| "Depreciación del *truck* H-601 como resultado de la colisión | 150. 00 |
| "Rendimiento diario de ganancias a razón de $10 diarios que producía el ya mencionado vehículo H-601 al demandante y totalidad de dicho rendimiento computado desde la fecha del accidente, o sea desde el día 4 de abril de 1939 y hasta el día de hoy | 1, 640. 00 |
| | $2, 580. 11." |

Y al presentar su caso en el acto del juicio, el abogado del demandante terminó diciendo lo que sigue:

". . . que como consecuencia de ese choque el truck sufrió serios desperfectos, el costo de cuyas reparaciones es lo que se reclama, así como también la pérdida de los beneficios en el uso del vehículo."

En tal virtud creemos que en verdad asiste la razón a las apelantes al sostener que la corte de distrito varió sin autoridad la teoría de la reclamación. "Al resolver la Sala sentenciadora sobre un extremo diferente de los sometidos expresamente a su decisión en la demanda, infringe las reglas de jurisprudencia *non valet sententia lata de re non petita; si judex pronunciat ultra petita, sententia est ipso jure nulla.* S. de 11 de febrero y 2 de octubre de 1867.— 24 y 28 de enero de 1869 y 15 de octubre de 1880." Scaevola, Principios Generales del Derecho Civil, página 329.

■■ Prescindiendo de la variación, hemos estudiado los autos y encontramos que la única evidencia aportada por el demandante fué su propia declaración. Todo lo que dijo sobre la materia, además de lo transcrito por el juez de distrito en su relación del caso y opinión, fué, en resumen, lo que sigue:

Como consecuencia del choque "el truck está completamente destruído." El chassis está en dos bandas, el diferencial se salió hasta de las uniones, la plataforma completamente destruída y también el gabinete.

Se le pregunta que cuánto costaban las piezas necesarias para la reparación y contesta que no sabría decir; que él hizo las gestiones, que le pidieron cincuenta pesos y pico . . . . Sin terminar interviene su abogado, "¿No lo recuerda, . . . dígame, testigo, cuánto costó ese truck?" Y contesta, "El truck me costó novecientos pesos. . . . Lo compré desde octubre 1 de 1938." Sigue su abogado interrogándole, "¿Como consecuencia de este accidente, el truck quedó totalmente inservible?" "Sí, señor." Y el abogado dice "Nada más."

A las repreguntas del abogado de las demandadas contesta que trabajaba al mes con el truck de 18 a 20 días. En abril, mes del accidente, trabajó tres días. En febrero no recuerda. Se dedicaba a la carga de arena, por subasta. Prieto la subastó en la PRRA y se la traspasó. Beneficio diario, teniendo en cuenta el de la arena, diez pesos. Cada viaje le producía tres pesos y medio. Le sobraba siempre diez pesos después de pagados la gasolina y el aceite. Cada viaje dejaba un beneficio de dos pesos y pico. Hacía de cinco a seis viajes diarios. Hacía cuatro meses que trabajaba en el sitio. Lo único que tenía era el truck. Luego dice, "Tengo una casita más."

Vuelve a ser preguntado por su abogado y contesta:

"P. Cuando usted dijo que calculaba un beneficio de dos dólares en la arena, ¿usted incluía en ese beneficio o no. . . ? T. Los pagos de los peones, gasolina, aceite. . . P. ¿Y uso y costo de su carro? T. Esos dos pesos eran limpios en cada viaje. P. ¿A cómo compraba la arena? T. Pagaba noventa pesos. P. ¿A qué la vendía? T. A peso el metro. P. ¿Usted calcula esos dos pesos por viaje porque tenía su truck? T. Sí, señor. P. Si no hubiera tenido truck y lo hubiera ido a alquilar, ¿a cómo se transporta la arena por el truck? T. Bueno, dependería, como eso es cuestión de negocios. P. ¿Usted alguna vez ha alquilado su truck por día? T. Yo, nunca. P. ¿Y

usted no sabe a cómo se transporta cada metro de arena? T. A peso, . . . bueno, depende también para los sitios que sea. P. ¿ Ese peso es el costo del transporte de arena? T. Sí, señor. P. ¿ Eso es lo que se gana el truck por transportar arena? T. Sí, señor. P. ¿ Y esos dos pesos los estaba calculando, cuando, dijo así al señor juez, a base de que la arena no le costaba nada y porque tenía su truck podía transportarla en su truck y así realizar ese beneficio de dos pesos? T. Sí, señor.''

Repreguntado de nuevo por el abogado de la parte contraria contesta que pagó el precio del truck—novecientos dólares—a Prieto en plazos. Del mismo trabajo lo pagó. Lo cogió antes de octubre en que lo compró formalmente. Le dió primero cuatrocientos pesos, después doscientos y por último trescientos. Luego dice, ''tengo familia que tiene dinero y me presta,'' y que el pago lo verificó ''parte de mi trabajo y parte de préstamo de mi familia.'' Su familia—su tío Eleuterio Santana—le prestó quinientos dólares que aún no le ha devuelto.

Por mayores que sean los esfuerzos que se hagan no podrán encontrarse elementos en esa evidencia suficientes para fijar la depreciación del truck desde su compra hasta el momento del accidente, ni para valorar las piezas del mismo después del choque, y en su consecuencia queda sin base el cálculo hecho por la corte sentenciadora. Esto aparte de que la afirmación de dicha corte de que el demandante carecía de medios para sufragar la reparación, no sólo no encuentra apoyo en la evidencia, si que ésta la contradice, y aparte también de que no quedó demostrado que el truck no pudiera repararse.

Ninguna evidencia fué aportada que permita fijar el valor del truck el día o alrededor del día del accidente. Véase 8 R.C.L. 486. El truck de que aquí se trata se compró usado seis meses antes del accidente y siguió usándose en la carga de arena. El precio de la compra era un dato a considerar, pero no por sí solo suficiente para fijar su valor el día en que fué destruído.

Dejando ahora a un lado el método seguido por la corte para llegar a la suma en que fijó la indemnización, ¿puede encontrarse en los autos algo que permita conceder alguno o algunos de los daños específicos reclamados, a saber, averías, depreciación, y ganancia dejada de obtener?

Se probó la existencia de averías, pero no su valor. La depreciación no fué objeto de evidencia. Queda sólo la ganancia dejada de obtener, que se reclamó por un tiempo claramente improcedente, esto es, desde la fecha del accidente hasta la de la interposición de la demanda, sin indicarse el tiempo probable que hubiera exigido la reparación, tiempo que luego tampoco suplió la prueba.

Faltando ese dato, no puede verificarse el cálculo.

Pocas veces podrá presentarse al juzgador un caso más claro que éste en cuanto a la procedencia de la indemnización, en que, eso no obstante, no pueda concederla por haber dejado de proporcionarle la parte que la reclamó y que por tanto tenía el deber de hacerlo, los datos necesarios para fijarla.

*En su consecuencia, debe revocarse la sentencia apelada en la parte en que lo fué, esto es, en aquella por virtud de la cual fueron condenadas las demandadas The Maryland Casualty Company, Inc. y The Northern Porto Rico Railroad Co. a pagar setecientos dólares de indemnización, con costas y honorarios, absolviéndose también de la demanda a dichas demandadas, con las costas al demandante, sin incluir en ellas los honorarios de abogado.*